UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X

JOSEPH FERLITO and ANGELO FERLITO,

                Plaintiffs,                      **MEMORANDUM & ORDER**

       -against-                      06 CV 5708 (DRH)(AKT)

THE COUNTY OF SUFFOLK,
P.O. CHRISTIAN HUBERT,
P.O. MICHAEL S. TURANSKY, and
STEVEN A. LEVY a/k/a STEVE LEVY,

                Defendants.
----------------------------------------------------X

**APPEARANCES:**

**Law Offices of Frederick Brewington**
Attorneys for Plaintiffs
556 Peninsula Boulevard
Hempstead, New York 11550
By:    Valerie M. Cartright, Esq. (on brief)
        Frederick K. Brewington, Esq.
        Victor Serby, Esq.

**Suffolk County Attorney**
Attorney for Defendants
H. Lee Dennison Building
100 Veterans Memorial Highway
Hauppauge, New York 11788-0099
By:    Arlene S. Zwilling, Esq.

**HURLEY, Senior District Judge:**

        Plaintiffs bring this action against the County of Suffolk (the "County"), its

County Executive at the time of the alleged conduct, Steve Levy, and two Suffolk County

police officers pursuant to 42 U.S.C. § 1983, alleging excessive force, false arrest, and

malicious prosecution, and pursuant to state law alleging battery, assault, false arrest, negligent hiring and defamation.[1]  Before the Court is defendants' motion for partial summary judgment as to plaintiffs' federal *Monell*[2] claims against the County, and as to all of plaintiffs' remaining state law claims.  For the reasons that follow, defendants' motion is granted in part and denied in part.

## BACKGROUND

On July 24, 2005, plaintiff Joseph Ferlito ("Joseph") confronted one Ronald Bowman in Lindenhurst, New York and began "lecturing" him for operating his motorcycle in an "unsafe, obnoxious, and rude" manner. (Plaintiffs' Statement of Facts Pursuant to Local Civil Rule 56.1 ("Pls.' 56.1") ¶ 4.)  Plaintiff Angelo Ferlito ("Angelo") approached his brother Joseph to inquire about the conflict. (*Id.* ¶ 5.)  Meanwhile, defendant police officers Michael S. Turansky ("Turansky") and Christian A. Hubert ("Hubert"), who were parked in their vehicles approximately four houses away, saw the interaction, got out of their cars and ran towards the two plaintiffs. (*Id.* ¶ 6.)  One of these two officers, "jumped [Joseph] from behind, and put him into a choke hold and punched him in the head." (*Id.* ¶ 7.)  The other officer "jumped" Joseph as well.  As he did, the first officer turned and "grabbed [Angelo] by the neck, punched him[, ] knocked him down, slamming his face into the ground . . . sprayed him in the face with OC spray (mace), [ ] violently twisted his arms behind his back then handcuffed him," and kicked him as he lay handcuffed on the ground. (*Id.* ¶¶ 8-10.)  The second officer maced Joseph

---

[1] Plaintiffs' negligent hiring and defamation claims were dismissed by prior Order of this Court. *See Ferlito v. County of Suffolk*, 2007 U.S. Dist. LEXIS 85523 (E.D.N.Y. Nov. 19, 2007).
[2] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

and repeatedly punched and elbowed him in the head. (*Id.* ¶¶ 12-14.) Several onlookers witnessed these events, including Angelo's fourteen-year-old daughter. (*Id.* ¶¶ 11,15.)

Both plaintiffs were taken to the hospital. Although the emergency room physician recommended that they be admitted, for reasons not apparent in the parties' fact statements, they were instead taken to the nearest police precinct, where the officers charged both individuals with misdemeanor resisting arrest. (*Id.* ¶¶ 19-22.)

The Suffolk County Police Department initiated an internal affairs investigation, which concluded that Turansky failed to follow Department procedure requiring that individuals charged with resisting arrest be photographed. (*Id.* ¶ 25.) The investigation further recommended that Turansky receive "training/counseling in that area." (*Id.* ¶ 26.) Hubert "recalls" at least two excessive force claims having been brought against him prior to this incident. (*Id.* ¶ 29.) He was not disciplined in relation to these accusations and has since received a promotion. (*Id.* ¶ 30.)

## DISCUSSION

I.  **STANDARD OF REVIEW** - SUMMARY JUDGMENT

Summary judgment should be granted where the pleadings and admissible evidence offered to the Court demonstrate "no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56; *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). Further, the relevant governing law

determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Accordingly, where the undisputed facts demonstrate the union of all the required elements of a cause of action and no reasonable juror could find otherwise, the plaintiff is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.").

A party may defeat a motion for summary judgment only "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial." *Roe*, 542 F.3d at 36 (quoting *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998)). The non-movant must advance more "than a scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory statements in affidavits or allegations in the pleadings are insufficient to defeat a motion for summary judgment. *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

## II. *MONELL* CLAIMS

Defendants seek summary judgment on plaintiffs' claims against the County pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), arguing that plaintiffs have failed to set forth evidence of a custom, policy, or practice of the County that would entitle them to relief.

A municipality may not be held liable under section 1983 on a *respondeat superior* theory of liability for its employees' alleged constitutional violations. *See Monell*, 436 U.S. at 691; *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). A municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through [ ] official decisionmaking channels." *Monell*, 436 U.S. at 690-91. Therefore,

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694 (quoted by *Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005)).

The existence of a municipal policy or custom may be established in any of the following four ways. A plaintiff may demonstrate that his or her constitutional injuries arose from: "(1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Williams v. City*

5

*of Mt. Vernon*, 428 F. Supp. 2d 146, 159 (S.D.N.Y. 2006) (citing *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)); *see also Bonds v. Suffolk County Sheriff's Dep't*, 2006 U.S. Dist. LEXIS 93607 (E.D.N.Y. Dec. 5, 2006) (same); *Peterson v. Tomaselli*, 2004 U.S. Dist. LEXIS 19765, 2004 WL 2211651, at *9 (S.D.N.Y. Sept. 30, 2004) (same).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). "Where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004); *see also Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."). A showing of deliberate indifference in this context entails three parts:

> (1) [that the] policymaker knows "to a moral certainty" that its employees will confront a given situation; (2) [that] either [the] situation presents employees with [a] difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling situation; and (3) [that the] wrong choice by employees will frequently cause deprivation of constitutional rights.

*County of Erie*, 654 F.3d at 334 (citing *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)).

Plaintiffs allege that defendants are liable under *Monell* for malicious prosecution, false arrest, and excessive force. (Compl. ¶¶ 61-69.)

6

### a. Malicious Prosecution

Plaintiffs devote most of their argument regarding *Monell* claims to allegations of malicious prosecution. Notably, no allegations of malicious prosecutions were brought against any individuals in this action, nor does the Complaint articulate much in the way of facts to support such a claim. The cause of action asserting plaintiffs' *Monell* claims alleges in relevant part that the County:

> has been alerted to the use of false criminal charges brought by its employee officers to cover up the use of excessive and unreasonable force by its police officers, and that the culture of bringing such false charges has been allowed to exist without repercussions to the officers who engage in such behavior.

(Compl. ¶ 67.)

A plain reading of this particular allegation implicates the conduct of the officers in drafting the accusatory instrument, not the conduct of anyone in the District Attorney's office who later prosecutes the criminal case. Furthermore, the only relevant facts set forth elsewhere in the pleading suggest that the defendant officers "falsely charg[ed]" plaintiffs and created "false accusatory instruments." (Compl. ¶¶ 51-52.) None of the alleged facts specifically involve the prosecution of such charges, or the involvement of any prosecutors in the drafting of accusatory instruments by the defendant officers.

Despite this deficiency, plaintiffs now argue in their opposition to defendants' motion that *Monell* liability should nevertheless attach to the County for alleged malicious prosecution because prosecutors allegedly offered to drop the criminal charges against the plaintiffs in exchange for plaintiffs' agreement to withdraw the present lawsuit. (Pls.' Opp. at 9-11.) Plaintiffs argue that by offering this deal, defendants

7

infringed upon their due process rights. (*Id.* at 10.) The Court need not address the merits of this claim for two reasons. First, to the extent that this claim sounds in a violation of due process, plaintiffs have not brought such a claim in their pleading, and they cannot assert such for the first time in an opposition memorandum to a summary judgment motion. Second, even if the Court were to credit that this dismissal offer violated plaintiffs' constitutional rights, the claim is brought against the County; no individual prosecutors were named in this suit.[3] Plaintiffs fail to point to any evidence in the record demonstrating that such offers are a custom, policy, or practice of the County as required under *Monell*.[4] For the same reason, plaintiffs' arguments that the District Attorney acted improperly in this particular criminal case by "processing [the] case as an incident of domestic violence," or by somehow mishandling and losing the physical case file is also unavailing. (*See* Pls.' Opp. at 12.)

In reaching the above conclusion, the Court is not moved by what plaintiffs term as the "undisputed" expert testimony of Gary Certain, Esq. (*See, e.g.,* Pls.' Opp. at 11-14.) Plaintiffs argue that their expert *inter alia* "render[ed] an opinion that the County [] is liable for malicious prosecution since its police officers were engaged in conduct that was inappropriate." (Pls.' Opp. at 13.) Advancing the testimony of an expert to support such propositions demonstrates a fundamental misapprehension of the role of expert witnesses. These witnesses serve to offer "scientific, technical, or other specialized knowledge [to] help the trier of fact to understand the evidence or to determine a fact in

---

[3] For reasons not evident to the Court, plaintiffs refer on more than one occasion in their brief to the "defendant District Attorney." (Pls.' Opp. at 8, 11.) Again, plaintiffs have not named the District Attorney or any individual prosecutor in this case.

[4] For example, plaintiffs argue that this particular offer constituted a broad policy "as it was clear that the District Attorney's Office had communications with the County Attorney's office regarding the same." (Pls.' Opp. at 13.) However, the testimony in support of this assertion is based entirely on the speculative testimony of an individual without personal knowledge of this incident. (*See* Certain Dep. 96-98.)

issue." Fed. R. Evid. 702. Their purpose is not to offer opinions on matters of law. Accordingly, where this expert testimony is offered to establish matters of law, and in many instances in plaintiffs' papers it is, such testimony will be disregarded. Furthermore, plaintiffs' argument that the "opinions rendered by [the] Expert-Attorney, Gary Certain, Esq. are undisputed and [that] defendants have offered no Expert Report in opposition and/or rebuttal," (Pls.' Opp. at 14), has no bearing on the outcome of the present motion. It is the existence of disputed issues of material *fact*, not opinion, that affects the disposition of claims at the summary judgment stage.

### b. Excessive Force and False Arrest

In support of their arguments for *Monell* liability as to excessive force and false arrest, plaintiffs suggest that the County knew of the likelihood that their officers would engage in such conduct because there is a "multitude of Fourth Amendment cases that challenge police practices both locally and nationally historically." (Pls.' Opp. at 8.) As further evidence of this purported knowledge as it pertains to excessive force in particular, plaintiffs cite to the fact that the County Police Department has a policy of requiring that individuals charged with resisting arrest be photographed – a policy, plaintiffs note, that the defendant officers failed to follow. *Id.* This argument, however, tends to undercut plaintiffs' case for *Monell* liability, as it demonstrates that the County actually enacted measures to discourage excessive force by its officers.

This proffered evidence that the County's purported knowledge of excessive force and false arrest within the ranks of the Police Department does not lend to the conclusion that the County acted with deliberate indifference. Most notably, despite plaintiffs'

9

insistence that a "multitude" of cases involving police misconduct screams out for action by the County, plaintiffs fail to identify in their brief even one of these cases, save for the present action. Plaintiffs also fail to offer evidence that the County's existing efforts, to the extent they exist, are inadequate, or to identify what measures should be taken—even in the broadest sense—to address the purportedly pervasive issues plaguing the County Police Department. Without even attempting to identify these elements of fact, plaintiffs cannot prevail under the "stringent" standard for deliberate indifference under *Monell*.

Finally, plaintiffs also argue under this claim that the County failed to "timely" investigate the plaintiffs' administrative allegations of police misconduct after they were reported to the Department. As these post-incident measures would not have had any effect on the conduct of the officers alleged in the complaint, the alleged inaction at issue cannot therefore be the cause of plaintiffs' alleged deprivation.

As plaintiffs have failed to proffer sufficient evidence to permit a trier of fact to find *Monell* liability against the County, defendants' motion for summary judgment as to plaintiffs' federal claims against the County is granted.

### III.   STATE LAW CLAIMS

Defendants' sole argument for dismissing plaintiffs' state law claims is that they are barred by the applicable statutes of limitations. (Defendants' Memorandum of Law in Support ("Defs' Br.") at 15 (citing N.Y. Gen. Mun. L. §§ 50-i, 50-m)). Certain state law negligence claims, including those asserted here, against a "city, county, town, village, fire district or school district or of any officer, agent or employee thereof" must be filed within one year and ninety days of accrual. *See* N.Y. Gen. Mun. L. § 50-i. The

allegations in the present Complaint arise from events that occurred on or after July 24, 2005. One year and ninety days following this date is October 22, 2006, which, as plaintiffs correctly point out, was a Sunday. This case was commenced on October 23, 2006, the next business day, and is therefore timely under Fed. R. Civ. P. 6(a)(1)(C). Defendants' motion for summary judgment as to plaintiffs' state law claims is therefore denied.

### IV. MOTION *IN LIMINE*

Finally, defendants urge that in the event that the *Monell* claims are dismissed, the testimony of plaintiffs' expert Gary Certain, Esq. should be precluded because, defendants argue, such testimony was offered solely in support of plaintiffs' claims for municipal liability. (Defs.' Br. at 14.) The Court need not address this issue at this time. To the extent that this testimony is offered to establish matters of law (see discussion *supra*), and to the extent that it is offered to establish municipal liability, such portions of the testimony will be precluded. However, some portions of the testimony may arguably speak to issues of fact regarding the claims proceeding to trial in this case. The Court will entertain arguments from the parties as to the admissibility of any such portions of the testimony at trial. Defendants' motion *in limine* is therefore denied without prejudice.

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted as to plaintiffs' claims for municipal liability against the County under the federal causes of action, but denied as to plaintiffs' remaining state law claims. Defendants'

motion *in limine* to preclude the testimony of Gary Certain, Esq. is denied without prejudice.

A final, pretrial and settlement conference is hereby scheduled with the undersigned for October 12, 2012 at 3:00 p.m. The parties shall each fax[5] my Chambers a brief confidential statement of their respective settlement positions by the close of business on October 5, 2012.

SO ORDERED.

Dated: Central Islip, New York
       September 6, 2012                                /s
                                                Denis R. Hurley
                                                United States District Judge

---

[5] These confidential submissions shall not be filed on ECF. The fax number may be obtained by telephoning Chambers.